IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CARRIE DAWN RAPER                                                                                       PLAINTIFF

v.                          Civil No. 1:23-cv-01034-SOH-BAB

POLICE CHIEF SHAUN HILDRETH, Warren
Police Department; DETECTIVE ROBBIE ASHCRAFT,
Warren Police Department; and DETECTIVE TIM
NICHOLS, Warren Police Department                                                         DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Carrie Dawn Raper ("Raper"), pursuant to 42 U.S.C. § 1983. Raper proceeds *pro se* and *in forma pauperis*. Raper contends the Defendants engaged in a pattern of harassing conduct that included retaliatory actions, unlawful seizures, the violation of her right to remain silent, the violation and her right to counsel, and malicious prosecution.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on the Motions to Dismiss (ECF Nos. 13 & 20) filed by Police Chief Shaun Hildreth, Detective Robbie Ashcraft, and

Detective Tim Nichols.[1]  Raper has filed a response (ECF No. 25).  The Motions[2] are ready for decision.

## I. BACKGROUND

In the Complaint (ECF No. 1), Raper alleges that from 2017 until May 31, 2022, Defendants used "their power and resources to harass and terrorize me, causing me numerous health problems, having to sell my home, and destroying my name in the community."  (ECF No. 1 at 4-5).  Raper says these acts included the following: In 2017, Raper says she was held on a false accusation and denied an attorney.  *Id.* at 5.  She asserts Detective Nichols threatened her with being jailed for 72-hours without her medication.  *Id.*  Six hours later, after being forced to make a statement, she was released with no charges.  *Id.*  Raper further alleges that after she was released Chief Hildreth had two individuals "follow and stalk both myself and my home for the next year."  *Id.*  After she filed complaints, Raper says the harassment worsened.  *Id.* at 6.

Raper says she was twice being arrested on felony charges only to have the charges dropped as there was no evidence to support them.  (ECF No. 1 at 6).  Raper asserts she was illegally detained, searched, and paraded in handcuffs out of the courtroom.  *Id.*  Raper indicates Detective Ashcraft knew it "was impossible for me to have committed the crimes at issue."  *Id.*  Raper alleges the Defendants fabricated charges against her "because they knew that as long as I had an

---

[1] The claims against Tim Nichols were initially severed and transferred to the Eastern District of Arkansas; Raper listed him as the Sheriff of Drew County, Arkansas and did not indicate she was suing him in his capacity as a detective in the Warren Police Department.  (ECF No. 1).  Drew County is in the Eastern District of Arkansas.  However, it later became clear that at all times pertinent to this case, Tim Nichols was a detective with the Warren Police Department.  (ECF No. 8).  Detective Nichols was added as a Defendant and service was directed on him.  (ECF No. 9).  Detective Nichols is therefore properly before the Court.

[2] Although separate motions and briefs were filed by the Defendants, the documents are virtually identical.  *Compare* (ECF Nos. 13 & 14); (ECF Nos. 20 & 21).

active criminal case open that I could not file a federal lawsuit." *Id.* at 6-7. Raper alleges these are just a few examples of what she endured. *Id.* at 7. She maintains this all occurred over the span of five years. *Id.*

The Amended Complaint (ECF No. 8) contains no specific dates. Instead, Raper alleges the Defendants denied her the right to an attorney and forced her to testify or make statements against her will on more than one occasion. *Id.* at 4. When the form complaint calls for Raper to write the date and approximate time of the events giving rise to her claims, Raper responds: "Because of the trauma inflicted and the number of incidents that occur[r]ed I can only say that it occurred around the time of the false accusations being made. Ask the defendants. They should have all the Miranda waiver rights forms dated and signed." *Id.* Raper says her husband as well as other police officers were present during all the encounters. *Id.* As relief, Raper seeks compensatory and punitive damages.[3] *Id.*

---

[3] Defendants cite the Court to two other lawsuit Raper filed "presumably for the same incident, and alleging essentially the same claim." (ECF No. 14 at 1); (ECF No. 21 at 1). However, *James M. Raper and Carrie D. Raper,* Civil No. 1:18-cv-01073, involves actions taken by Officer Britton in regard to searching the Rapers' vehicle and alleges multiple arrests of James Raper and a single arrest of Carrie Raper. The case was dismissed when the filing fee was not paid. Here, Raper has made no allegations regarding searches of her vehicle. However, it is possible her arrest is one included in the litany mentioned in this case. The second case referenced is Civil No. 4:21-cv-00094. This case was filed in the Eastern District of Arkansas on February 4, 2021. Chief Hildreth, Detective Nichols, and Detective Ashcraft were among the Defendants named. Raper alleged she had been harassed since January of 2016 in violation of her Fifth Amendment rights. The Court found any claimed violations of Raper's rights before February 5, 2018, were barred by the statute of limitations. (ECF No. 6 at 2). With respect to the remaining claims, the Court held that *Younger v. Harris,* 401 U.S. 27 (1971) "barred [the Court] from addressing any on-going state criminal case," and *Heck v. Humphrey,* 512 U.S. 477 (1994) precluded an "award of damages under § 1983 unless a conviction has been invalidated." (ECF No. 6 at 3). It is unclear to the Court why this case was not transferred to this district. Warren, Arkansas, is in Bradley County which lies within the El Dorado Division of this Court.

## II. APPLICABLE STANDARD

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Although *pro se* complaints, such as this one, are entitled to a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must nevertheless contain specific facts in support of the claims it advances. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

## III. DISCUSSION

Defendants maintain the case is subject to dismissal for the following reasons: (1) the claims are vague, conclusory, and unsubstantiated; (2) the claims based on events occurring prior to April 28, 2020, are barred by the statute of limitations; (3) the Fifth Amendment only applies to the federal government; and (4) the Sixth Amendment right to counsel had not attached. The Court will address each of Defendants' arguments although not necessarily in the order raised by Defendants.

### A. Vague, Conclusory, and Unsubstantiated Claims

Although the filing of an Amended Complaint normally supersedes the original Complaint and becomes the operative pleading, *see In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1067 (8th Cir. 2000), where a *pro se* party's amended pleading is clearly meant to supplement, or be read together with, the original complaint, the Court will give liberal construction to both pleadings.[4]  *See e.g., Cooper v. Schiro,* 189 F.3d 781, 783 (8th Cir. 1999).  Reviewing the Complaint and Amended Complaint, it is clear the two were meant to be read together.  The Complaint sets forth some examples of the alleged false arrests, retaliatory acts, and malicious prosecution on the part of Defendants.  The Amended Complaint again asserted claims against Tim Nichols, but indicated he was a Detective in the Warren Police Department at the time of the events giving rise to this lawsuit.  Raper then proceeds to name people who were present during the encounters.  Liberally construing the Complaint and Amended Complaint as the Court must, Raper claims violations of the First, Fourth, Fifth, and Sixth Amendments.  The Court turns to the question of whether the facts alleged assert plausible claims under these Constitutional Amendments.

**(1). First Amendment**

Raper has alleged that starting at some date in 2017, Chief Hildreth had officers follow and stalk her and watch her home.  (ECF No. 1 at 5).  After she complained to a police sergeant and the mayor, the harassment "got worse."

"Criticism of public officials and the administration of governmental policies lies at the heart of speech protected by the First Amendment."  *Rinne v. Camden Cty.,* 65 F.4th 378, 383 (8th Cir. 2023)(cleaned up).  A citizen's right to exercise First Amendment freedoms 'without

---

[4] The Court notes that Defendants refer to both pleadings in their Motions to Dismiss.

facing retaliation from government officials is clearly established.'" *Baribeau v. City of Minneapolis,* 596 F.3d 465, 481 (8th Cir. 2010)(quoting *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir. 2007)). To establish a First Amendment retaliation claim, Raper must show: (1) she engaged in protected activity; (2) Defendants took adverse action against Raper which would chill a person of ordinary firmness from continuing in the protected activity; and (3) there was a but-for causal connection between Defendants' retaliatory animus and Raper's injury.[5] *Brandy v. City of St. Louis,* 75 F.4th 908 (8th Cir. 2023); *see also Green v. City of St. Louis,* 52 F.4th 734, 739 (8th Cir. 2022)(citations omitted). Raper has asserted a plausible First Amendment retaliation claim. At this stage in the case, this is all she needs to do. *See e.g., Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004)(Liberal construction means the Court construes a pro se litigant's filing "in a way that permits the [litigant]'s claim to be considered within the proper legal framework").

**(2). Fourth Amendment**

Raper's allegations suggest two separate violations of the Fourth Amendment—the first an unlawful seizure and/or arrest and the second malicious prosecution.

**(a). Unlawful Seizure and/or Arrest**

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend IV. To establish a Fourth Amendment violation, 'the claimant must demonstrate a seizure occurred and the seizure was unreasonable.'" *Quaishi v. St. Charles Cty.,* 986 F.3d 831, 839 (8th Cir. 2021)(quoting *McCoy v. City of Monticello,* 343 F.3d 842, 846 (8th Cir. 2003)). "A Fourth

---

[5] In retaliatory arrest claims, the Eighth Circuit has identified a fourth prong: lack of probable cause or arguable probable cause. *Galarnyk v. Fraser,* 687 F.3d 1070, 1076 (8th Cir. 2012).

Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *McCoy,* 343 F.3d at 846. "To be seized, 'a reasonable person would have believed that he was not free to leave.'" *Quaishi,* 986 F.3d at 839 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). "A warrantless arrest that lacks probable cause violates the Fourth Amendment." *Robbins v. City of Des Moines,* 984 F.3d 673, 679 (8th Cir. 2021) (citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004).

Raper alleges that on multiple occasions she was taken in and questioned by Defendants although ultimately no charges were brought. It is not clear whether she was arrested on these occasions or just taken to the police station. She further alleges that the Defendants were all personally involved in these encounters. The allegations are sufficient to state a plausible claim Fourth Amendment claim for unlawful seizure and/or arrest.

**(b). Malicious Prosecution**

The Supreme Court has held that malicious prosecution is actionable under the Fourth Amendment. *Thompson v. Cark,* ___ U.S. ___, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022). Raper may pursue a malicious prosecution claim by showing: "(1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Id.* at 1338.

In this regard, Raper has alleged she was twice arrested on felony charges. Both times, she alleges the charges were dropped. She contends these charges were brought against her as

7

part of the continuing practice of harassment and to keep her from filing a civil rights complaint in federal court.   A plausible claim malicious prosecution claim has been stated.

### (3).  Fifth Amendment

Raper's allegations suggest violation of two separate Fifth Amendment protections—the right against self-incrimination and the right to counsel.

### (a).  Self-Incrimination

Defendants contend no Fifth Amendment violation exists because the Fifth Amendment only applies to the actions of federal officials.   Defendants mistakenly rely on cases addressing whether the Due Process Clause of the Fifth Amendment applies to the states.  *See e.g., Barnes v. City of Omaha,* 574 F.3d 1003, 1005 n. 2 (8th Cir. 2009)("The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property").   The Due Process Clause of the Fifth Amendment is not at issue in this case.

Instead, Raper contends her Fifth Amendment right against self-incrimination has been violated.  It is well settled law that the "Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgement by the States." *Malloy v. Hogan,* 378 U.S. 1, 6 (1964); *see also Gideon v. Wainwright,* 372 U.S. 335 (1963)(holding the Double Jeopardy Clause of the Fifth Amendment applicable to the States). The Fifth Amendment provides that a person may not be compelled to testify against themselves. *Kastigar v. United States,* 406 U.S. 441, 444 (1972).   "[I]t protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Id.* at 444-45.

8

No Self-Incrimination Clause claim exists. "Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez v. Martinez,* 538 U.S. 760, 767 (2003)(citations omitted). "Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." *United States v. Verdugo-Urquidez,* 494 U.S. 259, 264 (1990)(citations omitted). Raper has not alleged any compelled statements were used against her at a criminal trial. For this reason, no plausible Fifth Amendment self-incrimination claim is stated.

**(b).  Right to Counsel**

The right to counsel is protected by both the Fifth and the Sixth Amendments. *Patterson v. Illinois,* 487 U.S. 285, 297-98 (1988). The Fifth Amendment protection provides the right to counsel during custodial interrogations. *Edwards v. Arizona,* 451 U.S. 477, 482 (1981)("*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation"). "If the accused indicates that [s]he wishes to remain silent, "the interrogation must cease.'  If [s]he requests counsel, 'the interrogation must cease until an attorney is present.'" *Id.* (quoting *Miranda v. Arizona,* 384 U.S. 436, 474 (1966)). The Supreme Court has said that:

> [i]t is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Id.* (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

Raper has alleged a plausible Fifth Amendment denial of counsel claim.

9

**(4). Sixth Amendment**

The Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *Fellers v. United States,* 540 U.S. 519, 523 (2004)(quoting *Brewer v. Williams,* 430 U.S. 387, 398 (1977)). After an adversary judicial proceeding has commenced, the Sixth Amendment provides a right to counsel at a "critical stage" even when there is no interrogation and no Fifth Amendment applicability. *United States v. Wade,* 388 U.S. 218 (1967).

While Raper alleges felony charges were brought against her twice and eventually dropped, she does not indicate she was denied counsel once the adversary proceedings were initiated. Raper has therefore failed to allege a plausible violation of her Sixth Amendment right to counsel.

**B. Statute of Limitations**

"Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 483 (1980). Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." *Wilson v. Garcia*, 471 U.S. 261, 268 (1985). In Arkansas, this is the three-year personal injury statute of limitations, Ark. Code Ann. § 16-56-105(3). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001). "[A] state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvent if possible. In most cases, they are binding rules of law." *Bd. of Regents,* 446 U.S. at 484.

Raper filed this lawsuit on April 28, 2023. She alleges a pattern of harassment that began

10

in 2017 and ended on May 31, 2022. Defendants maintain all claims prior to April 28, 2020, are barred by the statute of limitations. Raper contends that she filed a case for stalking and harassment in 2020 in the Eastern District of Arkansas; however, the case was dismissed because she could not pursue the complaint while criminal charges were pending. Raper indicates the charges were not dropped until two years later. The Court assumes Raper is referring to *Raper v. City of Warren, et al.,* Civil No. 4:21-cv-00094.

"The purpose of a statute of limitations is to encourage the prompt filing of claims by allowing no more than a reasonable time within which to make a claim so a defendant is protected from having to defend an action in which the truth-finding process would be impaired by the passage of time." *McEntire v. Malloy,* 707 S.W.2d 582, 586 (Ark. 1986)(citation omitted). In *Arkansas v. Diamond Lakes Oil Co.,* 66 S.W.3d 613, 616-17 (Ark. 2002), the Arkansas Supreme Court stated that "[t]he limitation period found in § 16-56-105 begins to run when there is a complete and present cause of action, and in the absence of concealment of the wrong, when the injury occurs, not when it is discovered."

There are very few exceptions to the running of the statute of limitations. None appear to be applicable in this case. Raper makes no argument the wrongful acts of the Defendants were fraudulently concealed. *See Chalmer v. Toyota Motor Sales, USA, Inc.,* 935 S.W.2d 258, 261 (Ark. 1996)("Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence"). While Raper alleges a continuous pattern of harassment, the Arkansas Supreme Court has specifically rejected the "continuing-tort theory of tolling the statute of limitations." *Id.* at 264.

"It is 'hornbook law' that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the relevant statute." *Stracener v. Williams,* 137 S.W.3d 428, 431 (Ark. App. 2003)(citing *Young v. United States,* 535 U.S. 43, 49 (2002)). The Arkansas Court of Appeals stated that "[r]easonable diligence is essential in the context of equitable tolling." *Id.* While Arkansas has applied equitable tolling to the statute of limitations, it has not specifically defined the doctrine. *Loftin v. First State Bank,* 596 S.W.3d 16, 19 (Ark. App. 2020). In *Loftin,* the Plaintiff advanced the description of equitable tolling used by the Seventh Circuit in *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir. 1996) which was:

> [E]ven when the defendant is faultless, if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit. This is equitable tolling.

*Id.* Under the facts alleged in this case, it is clear Raper was not ignorant of the existence of her causes of action.

Likewise, equitable estoppel is inapplicable. As stated in *Scarlett v. Rose Care, Inc.,* 944 S.W.2d 545, 547 (Ark. 1997):

> In order to successfully assert the defense of equitable estoppel, the following must be shown: (1) conduct by one party who knows the facts and intends that his conduct be relied upon by the second party; (2) the party relying on the first party's conduct must be ignorant of the facts; (3) the party relying on the first party's conduct must do so to his detriment.

*Id.* (citations omitted). Raper is unable to make such a showing. The Court agrees with Defendants that any claims based on events occurring prior to April 28, 2020, are barred by the statute of limitations.

## IV. CONCLUSION

For these reasons, it is recommended that Defendants' Motions to Dismiss (ECF Nos. 13 & 20) be **GRANTED IN PART AND DENIED IN PART** as follows:

- all Fifth Amendment claims that Defendants violated Raper's right against self-incrimination should be **DISMISSED;**

- all Sixth Amendment right to counsel claims should be **DISMISSED;**

- all claims stemming from events occurring prior to April 28, 2020, should be **DISMISSED** as barred by the statute of limitations;

- Raper should be directed to file a Second Amended Complaint which should re-allege only those claims stemming from events arising after April 28, 2020. The Clerk should be advised to send Raper a blank § 1983 form.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of September 2023.

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE